**IN UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**

<table>
<tr><td>

**METROPOLITAN LIFE INSURANCE COMPANY,**

                         **Plaintiff,**

**v.**

**PHILLIP L. MANIGO,**

                    **Defendant.**

</td><td>

**Civil Action No.:** 2:26-cv-01794-RMG

</td></tr>
</table>

## COMPLAINT

Plaintiff METROPOLITAN LIFE INSURANCE COMPANY, through its undersigned attorneys, as and for its Complaint against the Defendant PHILLIP L. MANIGO herein, alleges:

### Parties

1.      Plaintiff Metropolitan Life Insurance Company ("MetLife") is an insurance company organized and existing under the laws of the State of New York with its principal place of business in New York.

2.      Defendant Phillip L. Manigo ("Defendant") is a citizen of Walterboro, South Carolina with a mailing address of 220 Josie Drive, Walterboro South Carolina 29488.

### Jurisdiction and Venue

3.      In this action, Plaintiff MetLife seeks to recover funds that were paid in error by MetLife to the Defendant under a group insurance policy issued by MetLife to the United States Office of Personnel Management ("OPM") pursuant to, and incorporating by reference, the Federal Employees' Group Life Insurance Act ("FEGLIA"), 5 U.S.C. § 8701-8716.

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, since this is an action arising under FEGLIA, a law of the United States.

5.     This Court also has jurisdiction under 28 U.S.C § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. MetLife is a citizen of New York and the Defendant is a citizen of South Carolina for diversity purposes.

6.     The Defendant is a resident of Walterboro, South Carolina. Accordingly, venue is proper in the United States District Court for the District of South Carolina  pursuant to 28 U.S.C. § 1391.

## Background

7.     In 1954, Congress enacted FEGLIA "to provide low-cost group life insurance to Federal employees." H.R. Rep. No. 2579 at 1 (1954), reprinted in 1954 U.S.C.C.A.N. 3052.

8.      Section 8714 of FEGLIA (5 U.S.C. § 8714) requires that contributions paid by covered federal employees, as well as their employing federal agencies ("FEGLI Contributions") be deposited into the Treasury of the United States of America, to the credit of the Employees' Life Insurance Funds.

9.      Section 8709 of FEGLIA (5 U.S.C. § 8709) authorizes OPM to purchase one or more insurance policies from eligible insurance companies to provide the benefits specified by FEGLIA. The benefits payable under FEGLIA are payable according to the contracts with the companies that issue the policies under Section 8709. 5 C.F.R. § 870.102.

10.     Section 8714 of FEGLIA further authorizes OPM to use the FEGLI Contributions to pay the premium payments payable under insurance policies purchased under Section 8709.

11.     Pursuant to Section 8709, OPM purchased Group Policy No. 17000-G from MetLife to provide the benefits payable under FEGLIA. The policy, as amended, is known as the

2

Contract for Federal Employees' Group Life Insurance (the "FEGLI Contract"). The FEGLI Contract is the only policy issued under Section 8709. OPM is the group policyholder under the FEGLI Contract.

12.    Section 8709(d)(1) of FEGLIA states that "The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions."

13.    By its terms, certain federal statutes, including FEGLIA, are incorporated by reference into the FEGLI Contract. In addition, the FEGLI Contract states that FEGLIA, the regulations promulgated thereunder, and the FEGLI Contract "supersede and preempt any law or regulation of any State which relates to the provision and administration of group life insurance, including but not limited to the payment of benefits or any other matter which relates to [MetLife's] review, processing, or administration of a claim."

14.    All administrative functions related to FEGLIA up to the point of the death of a covered employee is conducted by the employing federal agency (for active employees) or by OPM (for retirees).

15.    OPM is also the recordkeeper under the FEGLI Contract. Under the terms of the FEGLI Contract, OPM is required to furnish to MetLife such information regarding covered federal employees as MetLife reasonably determines is necessary to carry out its obligations under the FEGLI Contract.

16.    Under FEGLIA and the FEGLI Contract, MetLife is required to make payment of benefits under the FEGLI Contract to the proper beneficiary or beneficiaries upon submission of

3

a valid claim. Section 8705 of FEGLIA (5 U.S.C. § 8705), provides the rules under which such beneficiary or beneficiaries must be identified.

### Statement of Facts

17.    Amy H. Manigo (the "Decedent") was initially covered for life insurance under the FEGLI Contract through her employment with the federal government.

18.    Upon information and belief, on November 10, 2022, the Decedent died.

19.    On or about Janaury 20, 2023, the Defendant asserted a claim to the death benefit payable upon the death of the Decedent pursuant to FEGLIA, 5 U.S.C. § 8701-8716.

20.    On or about February 3, 2023, MetLife paid 100% of the benefit due under the FEGLI Contract to the Defendant, as spouse of the Decedent, pursuant to the Order of Payment set forth in the FEGLI Contract, requiring the payment to be made to a covered employee's spouse if there is no beneficiary form, and to Ephriam D. Stephens, Stephens Funeral Home in satisfaction of an assignment of $2,756.00 (the "Assignment"). The total payment amounted to $109,126.93, which sum represents 100% of the proceeds. The total amount paid to Defendant amounted to $106,370.93 (the "Overpayment").

21.    After payment to the Defendant of the Overpayment, MetLife received a Designation of Beneficiary Form dated September 1, 2021, that did not name the Defendant to receive any of the proceeds, thus, the payment of the Overpayment to the Defendant erroneous.

22.    On or about November 16, 2023, MetLife advised the Defendant, in writing, that he was not entitled to receive, nor retain, the Overpayment. MetLife requested that the Defendant reimburse MetLife for a total amount of $106,370.93.

23.     On or about July 30, 2025 and August 19, 2025, through counsel, MetLife again advised the Defendant that he was not entitled to receive, nor retain, the Overpayment paid to him. MetLife requested that the Defendant reimburse MetLife for a total amount of $106,370.93.

24.     Despite repeated demands for repayment, the Defendant willfully and intentionally failed to reimburse MetLife the Overpayment inadvertently paid to him.

## COUNT I
### (Violation of FEGLIA, 5 U.S.C. § 8701-8716)

25.     MetLife repeats and realleges the allegations set forth in paragraphs 1 through 24 as if set forth fully herein. The Defendant received FEGLI proceeds in the amount of the Overpayment to which he was not entitled in the amount of $106,370.93.

26.     On or about November 16, 2023, MetLife advised the Defendant of the Overpayment and requested that he reimburse MetLife 100% of the Overpayment mistakenly paid to him.

27.     The Defendant's retention of the Overpayment after being notified is a violation of 5 U.S.C. § 8705, which is incorporated by reference into the FEGLI Contract, and under which Defendant is not a proper beneficiary.

28.     As a direct and proximate result of the Defendant's violation, MetLife is entitled to recoupment of the Overpayment in an amount to be determined at trial but in no event less than $106,370.93 plus applicable interest, attorneys' fees and costs of this action.

## COUNT II
### (Unjust Enrichment)

29.     MetLife repeats and realleges the allegations set forth in paragraphs 1 through 28 as if set forth fully herein.

5

30.     On or about February 3, 2023, based on the information then in its possession, MetLife paid the Defendant the Overpayment under the FEGLI Contract. The Overpayment amounted to $106,370.93 which represented the death benefit minus the Assignment.

31.     After payment to the Defendant of the Overpayment, MetLife received a Designation of Beneficiary Form dated September 1, 2021, that did not name the Defendant to receive any of the proceeds, thus, the payment of the Overpayment to the Defendant was erroneous.

32.     On or about November 16, 2023, MetLife advised the Defendant, in writing, that he was not entitled to receive, nor retain, the Overpayment. MetLife requested that the Defendant reimburse MetLife for a total amount of $106,370.93.

33.     On or about July 30, 2025 and August 19, 2025, through counsel, MetLife again advised the Defendant that he was not entitled to receive, nor retain, the Overpayment paid to him. MetLife requested that the Defendant reimburse MetLife for a total amount of $106,370.93.

34.     Despite due demand, the Defendant has failed and refused to reimburse MetLife for the Overpayment.

35.     By receipt of the Overpayment and, as a result of the Defendant's failure to reimburse MetLife for the Overpayment, the Defendant has been unjustly enriched in the amount of $106,370.93.

36.     Defendant should not, in equity and good conscience, be permitted to retain the $106,370.93 at the expense of MetLife.

37.     As a direct and proximate result of Defendant's wrongful conduct, MetLife is entitled to recoupment of the Overpayment in an amount to be determined at trial but in no event less than $106,370.93 plus applicable interest, attorneys' fees and costs of this action in order to recover the overpayment.

## COUNT III
### (Conversion)

38.     MetLife repeats and realleges the allegations set forth in paragraphs 1 through 37 as if set forth fully herein.

39.     Based on inaccurate information then in its possession, MetLife, in error, mistakenly paid the Defendant $106,370.93 purportedly payable under the FEGLI Contract and FEGLIA, which is incorporated by reference into the FEGLI Contract.

40.     Upon discovery of the Overpayment, MetLife so informed the Defendant of the Overpayment and requested the Defendant to repay the money.

41.     Despite due demand, the Defendant has, upon information and belief, willfully, intentionally, unconditionally and without authority refused to reimburse MetLife the Overpayment.

42.     The Defendant has thereby interfered with MetLife's right of possession and/or wrongfully detained, used or disposed of the funds. Accordingly, the Defendant has converted $106,370.93 for his own pecuniary gain to the detriment of MetLife.

43.     As a direct and proximate result of the Defendant's wrongful conduct, MetLife is entitled to recoupment of the Overpayment in an amount to be determined at trial but in no event less than $106,370.93 plus applicable interest, attorneys' fees and costs of this action in order to recover the overpayment.

**WHEREFORE**, as to Counts I, II and III, MetLife demands judgment against the Defendant (i) in the amount of $106,370.93 plus interest; (ii) awarding MetLife the costs and disbursements of this action, including reasonable attorneys' fees; and (iii) granting MetLife such further relief as the Court deems just and proper, including but not limited to punitive damages.

Respectfully submitted,
COLLINS & LACY, P.C.


By:    *s/Robert C. Blain*
Robert C. Blain, Esquire
Fed ID #: 11470
rblain@collinsandlacy.com
Post Office Box 12487
Columbia, SC  29211
803.256.2660 (voice)
803.771.4484 (fax)

ATTORNEYS FOR PLAINTIFF


April 28, 2026
Columbia, South Carolina

8